Is that right? My understanding, Your Honor, is that I am representing Mr. Frez and we are— Okay, as long as you have the right case. Okay, great. Proceed. Your Honors, Robert Malnicki here for the appellant, Samuel Frez. Okay. I would reserve two minutes for rebuttal. The thing that I want to focus on first, Your Honor, before I get to the Superior Court's handling of this, was the instruction that is actually at issue in this case. Yeah, if you could focus me on—there is some language in the instruction that may be troubling. But as you know, the EDBA standard is very, very deferential. And there's some other language in the instruction that I looked at that is mentioned in the appellee's brief that might be troubling. But you're only looking at the issue that—I guess you're arguing that under the court's instruction, a juror could find that if it was an accidental killing of a person without the specific intent to kill anybody, that the transfer of intent doctrine, as explained to the jury, would be sufficient to allow a first-degree conviction for what you're arguing could be an accidental discharge of the gun. Absolutely, Your Honor, with one caveat. This instruction not only permitted a finding that an accidental killing could be the intent to kill. It could have been an accidental killing by somebody else. The correct jury instruction, as pointed out in the magistrate judge's report and recommendation, where he called what disappeared, the court did a little bit of judicial hand-waving. The correct instruction would inform the jury that if you find that the defendant, the person charged, intentionally or deliberately used a deadly weapon on a vital body part, you may infer the specific intent to kill. So this instruction was, twice given, was simply the use, the, not the defendant's, anybody's use. And in this particular case, which I'll get to, that is particularly damaging. The use of a deadly weapon on a vital part of the victim's body may be considered as an item of circumstantial evidence. Well, what about what the court said at 1426 of the transcript? Now, and this is at the end of the—he's talking about specific intent. He's now into the doctrine of transferred intent. And he says, now, if you believe that the defendant intentionally used a deadly weapon on a vital part of Leslie Sotomayor's body, you may, if you wish, infer from that the defendant acted with malice. Right. He got it right with respect to third-degree murder. He got it blatantly wrong with respect to first-degree murder, which we were convicted of. I wasn't his trial lawyer. I assume that if he had been convicted back in, over 10 or 11 years ago of third-degree murder, that we would not have an appellate issue. I'm not suggesting that nobody would have brought it, but he wasn't convicted of third-degree murder. I don't know if he would have appealed, complained about third-degree murder on this evidence, Your Honor. But that's what, to me, makes it worse. If a jury was actually extremely attentive to these jury instructions, and if a jury intended to take the court's instructions and actually make meaning of everything the court was saying, and this jury actually came back and asked to be re-instructed, so they were taking their job somewhat seriously. Again, how seriously, we can't know. I don't endeavor to claim that I know. But if they were taking these instructions, again, the jury doesn't know the law, the jury could have then looked at third-degree murder, which would have been an arguably appropriate verdict in this case. I'm not rehashing sufficiency, but I think in the facts of this case, this instruction was extremely damaging. They could have listened to it. That, the way the judge gave it, made it easier for the jury to convict Mr. Perez of first-degree murder than third-degree murder. Roberts. Well, let me take you to another part. Again, this is what I meant just before. This is where he's specifically getting to transferred intent. And he says, There's testimony suggesting that the bullet which struck Leslie Salmonego may have been fired by a rival or adversary of this defendant, and then leaving out some of it. Under our law, if an individual shoots at others and that provokes a return of fire by the intended targets, the individual who initiates the gunfire may be held criminally responsible. That is, the intent to kill may be established as to one person and transferred to the victim caught and killed in the same incident. And then he says, So you do not have to find for the crime of homicide. And that's, I agree, troubling. Now, the defendant had the specific intent to kill Leslie Salmonego or malice with respect to Leslie Salmonego. That's the part that bothers me, but that's not what you're focusing on, the disjunctive. But then the court says, If you find that he had the specific intent to kill someone involved in the incident, you may transfer that intent. Now, why isn't that, given our deferential standard and looking at the jury instruction as a whole, why isn't that one sentence, even though it might be a bit confusing, sufficient to prevent us from finding that it was clearly erroneous under the AEDPA standard? I don't mean clearly erroneous. You know what I mean. Right. Unreasonable. My position is that it is, that the superior court did unreasonably apply. I don't think the superior court endeavored to determine federal law, let alone apply it. But that's not what I'm prepared to argue today. Well, they used, I guess, they used the state court test. And we said in Mompia that it's the same, Strickland, for federal purposes, is the same as, I guess, the spirits in the state court. And I agree with that, Your Honor, but I'm saying not that the court didn't cite a state standard, which if you put it up next to Strickland, might be the same standard. I'm saying if you look at what they did in this case, which I can get to in a minute, I don't think they endeavored to apply Strickland. They didn't even mention due process. But I can get to what the superior court did, which was kind of, in my opinion, not exactly proper judicial review. But addressing the question you asked me, Your Honor, the court, that's all the superior court said, is the court told the jury that in order to find first-degree murder, they had to find a specific intent to kill. But they defined, he then defined for them the specific intent to kill. And if the court wants to diminish how damaging this instruction is by calling it superfluous and not actually looking at the impact, how that didn't contradict, that kind of like modified what the court said. The actual deadly weapon instruction, Your Honor, is a standard Pennsylvania charge. If it's such a non-important charge to give to the jury, why is it being given in the first place? It has importance in our law. And with that importance comes an obligation to get it right. Because if you get it wrong, you're telling a jury that you can find that a person acts with a specific intent to kill, even though you don't find that he himself ever had the intent to kill, and even if you find he didn't deliberately shoot the weapon. But did the court say that? And if so, where did the court say that? Did the court ever say to them, you can find he had the specific intent to kill, even if you don't find the intent to kill someone? The court said the use of a deadly weapon on a vital part of the victim's body may be considered as an item of circumstantial evidence from which you can find it. Okay. The court said that. And that was one part of the instruction. We talked, and Judge McKee's questions directed you to other facets of the instruction. Another facet of this case was the Commonwealth's position, the Commonwealth's position as to how this killing took place never was based on, listen, ladies and gentlemen of the jury, you can find Mr. Perez guilty if anyone shot a gun with an intent to kill. They always talked about he willfully engaged in a crossfire. Right. So isn't it likely that the jury would have ignored the part of the instruction that you're making reference to? I don't know how, Your Honor. Well, it was just one part. It wasn't the whole. The state court judge, in his opinion, denying a post-trial motion, stated on a sufficiency challenge that the sufficiency challenge must fail because you can infer the specific intent to kill from the use of a deadly weapon. And that's correct. That's correct. Correct. But in that late stage, he wasn't picking up that Mr. Perez never fired the deadly weapon, and it was not clear, let alone intentionally. So why are we giving the jury such credit? You're saying there's clear evidence that Perez never fired a gun? No, there was clear evidence Perez never fired the gun that killed the woman. Okay. I think the evidence is a little bit shaky as to what Perez was shooting at, but I don't wish to litigate that issue. But I think the evidence was far from clear as to what Perez was shooting at when he was shooting. But it was never, you agree, it was never the Commonwealth's theory that, look, you can convict Perez if anyone shot a gun. That was never the Commonwealth's theory. If you read her theory, as deciphered from her closing argument, she talks about how this is a confusing case and your decision is not easy.  We can conclude that their theory was never that Perez fired the gun. I don't think a jury could determine that from her closing alone exactly that she was saying that. She talked about in her closing, this is a confusing set of facts and your decision is tough. And I don't remember exactly what she said, but she admitted this was a tough call for the jury and a confusing set of facts. I don't see how a jury can't listen to the courts. I don't see how a reasonable jury could not have concluded, wait a minute, we can find his intent to kill from, let's go through the court's instruction. She was shot. She was shot with a gun. That's the intent to kill if we want it. That's what that instruction allows the jury to do. Well, it's got to be a gun used at a vital point in the body. Somebody used a deadly weapon on her vital body part. This instruction told them that anybody's use, deliberate or intentional or otherwise, can be inferred by you as the specific intent to kill. And you brought up a good point, Your Honor, that the court got it correct with respect to third-degree murder. That's what the Superior Court said. That's what Magistrate Judge Pesto in his report and recommendation called a bit of judicial hand-waving because I never understood that. If it's so important to point out to us that the court got it right with respect to third, why don't you ever address how damaging it could have been to us that the court never got it right to first, which carries life imprisonment for which he's doing life imprisonment for, which was the charge he was convicted of? I, to this day, don't understand the Superior Court's point on this. The other thing the Superior Court did, Your Honor, is towards the 2002 opinion. The 2007 opinion basically rehashes the 2002 opinion in response to Mr. Perez's argument that this evidence wasn't overwhelming as the first. The Superior Court kind of diminishes that argument or doesn't understand it. In Albrecht, a case decided by this court, the court did say in determining prejudice from a jury instruction that this court should look at the overall strength and weakness of the case. This is a case where two witnesses aren't really clear on where he was shooting from. Maybe he was shooting at a car in which they got a first-degree murder conviction. I'm not saying it's insufficient evidence. I'm just saying the evidence wasn't overwhelmingly strong, and this court in Albrecht indicated you can look at the strength of the evidence in making a determination of prejudice. And while he has been convicted of first, and it appears as if that's going to be deemed sufficient evidence, I don't think you can say this was the clearest case of an intentional killing by Mr. Perez. So I do point that out, and the Superior Court never brought that up. The way you just worded that is clearly enough, and I think you just conceded it because you're not challenging sufficiency, is clearly enough, assuming that a proper instruction was given for a second. I know that's what the issue is here, but it's clearly enough for a jury to find beyond a reasonable doubt that Perez intended to kill someone, but he clearly did not intend to kill the person who died. I will concede that people with more authority and knowledge of the law have concluded that, Your Honor. This case was a really weaselly answer. Because the only problem I've had in handling this case for five or six years now is the Gaynor case, which is the prototypical Pennsylvania case, where two guys are standing so close to each other, firing away, and it's abundantly clear that each of them, Mr. Gaynor and his adversary, I forget his name even though I've read that case so many times, had the intent to kill each other. Unfortunately for Mr. Gaynor, an innocent bystander, it was clear. They were standing, I think, closer than you or I, shooting weapons at each other that each had the intent to kill each other. I always wondered how that principle of law would translate to somebody much further back shooting possibly at the tire of a car in the air. Again, that's the problem I had with the evidence, but I'm putting aside sufficiency, Your Honor, and I'm just saying look at the strength of the case. If you find it sufficient, I just say it's not the most overwhelming case of the specific intent to kill. It's certainly not Gaynor, and it's a case in which this instruction, I can't think of a more damaging instruction than Mr. Perez, than this instruction on this set of facts. When you look at this instruction and take it with all of the other points that both of my colleagues put to, can't you look at all of them and say that when you look at the one line that you're focusing on, it doesn't render the prejudice that you're arguing? I can't, Your Honor, because intent to kill was the ultimate element of this case. This instruction allowed the jury to say we can infer the intent to kill from anybody's use of a deadly weapon. In Pennsylvania, I can't, Your Honor, because I mean this instruction, you can say, ladies and gentlemen, you must find a specific intent to kill. Okay, great, and you can say that nine times, but then you go on to define for them the specific intent to kill. And in this particular case of transferred intent, not exactly paralleling Gaynor, Your Honor, I think a jury needed to thoroughly understand the law. Obviously, they needed to know the law regarding transferred intent, and once you've given the law regarding transferred intent, I think it was so important. In a confusing case, which the Commonwealth conceded was confusing, you get it right. This charge told them they could find the most critical element of first-degree murder from anybody's use of a deadly weapon on her vital body part. I honestly can't think of a more damaging instruction. Yes, Mr. Perez appears to have killed, be convicted of murder. I understand that. But again, it's as important to get the degree of homicide right as it is to get the perpetrator of homicide right, Your Honor. Thank you, Mr. Turner. Did you reserve time? I'm sorry? Did you reserve time for rebuttal? I don't recall. Two minutes, Your Honor. Okay, so we hear from you again. Thank you. Good morning. Good morning. I'm pleased to report Andrew Gonzalez on behalf of Respondents. Obviously, the Respondent's position is the District Court properly executed its duties under the AEDPA, looked at this case. This is a case where the Superior Court, counter to what Petitioner was mentioning and referencing,  Chief Judge, as you know, noted, as they said in Rompillo, you don't have to cite to the federal decisions. You don't have to cite to the federal law. The Court used the Pierce test, identical test, and I think very important to look at whether or not it actually applied the federal law is look at the path it took. Let's assume that you're absolutely right. At least for myself, I don't have any issue with the part of AEDPA that requires deference if it's decided on the merits. I think Pierce and Rompillo together would get you a merits decision. But the one part of the charge that I'll focus on with you, and I mentioned it to Mr. Malenicki in conjunction with the preceding paragraph, and I'm sorry if I'm mispronouncing your name. Correct me when you come back up. But the last thing he said in terms of transfer of intent, this is really troubling. If you find that he had the specific intent to kill someone involved in the incident or that he had malice with respect to someone involved in the incident, under our law, that intent may transfer. I don't know how a juror listening to that would not conclude that, well, he had malice toward, not toward the lady who died, but he had malice toward the other gang member. Judges just told us that malice transferred as first-degree murder. Now, that disjunctive is troubling. I think you'd agree, you may not agree, and don't agree it meets the AEDPA standard. But that is troubling because it's just dead wrong insofar as a first-degree murder conviction is concerned. Your Honor, I would submit that that charge is actually an accurate statement of transferred intent, as was found by the Superior Court. For first-degree murder? For first-degree murder under transferring intent. If he had this specific – I'm sorry, Your Honor. If I have malice toward A and shoot at A, not intending to kill the person, but say I shoot at them, I'm going to kneecap them, I'm going to take their knees out, and I'm a triple shot, B is standing nearby A, and I kill B. The bullet goes right through B's head. Never intended to kill A, but I acted with malice toward A. You're saying I'm guilty of first-degree murder, even though I never had the specific intent to kill. Your Honor, to clarify and point, as the judge indicated, if you find that he had the specific intent to kill someone or malice with respect to someone involved in the incident, that intent may transfer, either the malice or the specific intent. So whichever one you find, ladies and gentlemen of the jury, if you find he had specific intent to kill, that may transfer. If you find he had malice, that may transfer. Does the transfer of malice rise to the level of first-degree murder, though? No. Malice would have then – they would have met the standard for third. And what the court instructed is that you can either find – if you find specific intent or you find malice, that may transfer. That intent may transfer. Okay. So basically he's saying if you don't find he's guilty of first-degree murder, but you find he acted toward malice, he acted with malice, that that intent would also transfer, but he didn't then go further and say that that act of malice would preclude a conviction for first-degree murder. Mr. Gonzales, the problem I have with this instruction or the part of the instruction that Mr. Perez is complaining about is it really goes to the core of the case. Correct, sir. If the jury found that Perez was there and was firing a gun, they got the right person. Now they've got to decide the degree of guilt. Correct. And the questioned instruction, which says the use of a deadly weapon, is I think it goes to the core. Because if the jury hears that, wait a minute, that if anybody was firing a deadly weapon and Perez can be guilty of first-degree murder, there's going to at least be some confusion in the jury room. Would you agree with that? I would not. If they focus on it. And I'll explain why. All right. And, again, this goes to the standards of how the jury instruction should be evaluated, both federally, I believe this Court did it in Williams v. Beard, as the one I cited in my brief most recently, and as well as how the Superior Court analyzed this. You look at the challenge instruction. You're right. It is missing a part in that challenge-specific line. But you then have to look at the context of the instruction as a whole. Immediately preceding and after and throughout this instruction, the entire focus was on the defendant, Mr. Perez's actions. In fact, the line immediately preceding this, the judge tells the jury, in deciding whether the defendant had the specific intent to kill, you consider all the evidence regarding his words and conduct, all the attendant circumstances showing his state of mind, the use of a deadly weapon on a vital part of the victim's body may be considered as an item of circumstantial evidence from which you may, if you choose, infer that the defendant had the specific intent to kill. But even in that context, and that's what Judge Fisher just asked you, why isn't that misleading? And I agree that it doesn't make any sense to us. But who knows how a layperson would interpret that. If a layperson is told the use of a deadly weapon on a vital part of the victim's body by anybody may be considered as circumstantial evidence of the specific intent to kill, and you can only convict the defendant if you find, first remurder, if you find that he had the specific intent to kill. And that is, I hope you'll admit it's troubling. Maybe it's not troubling to you. You're right. I understand the court's trouble with it. Obviously, we've reached this level. There is some troubling issues with the instruction. I would submit to the court, when you look at it in the context as I read it, and now this is me as I'm reading it, as I'm hearing it, he's focusing on the defendant's actions. But you also know what first remurder is, and the jury does not know what first remurder is. That is correct, sir. Why would you think that the jury would infer, and I note your preceding paragraph noting the defendant's specific intent to kill, when the court became more generalized, why would you think that the jury wouldn't also, in its thinking, have a broader or more general view of the language in the paragraph at issue? The use of a deadly weapon on a vital part of the victim's body may be considered as circumstantial evidence. I mean, clearly the focus is not on the defendant there, and, in fact, doesn't the argument work against you? If the focus of the rest of the charge is on the defendant, and this specific paragraph has a different focus, wouldn't that, in fact, lead the jury to focus on this paragraph and say, oh, the judge is talking about something entirely different, and come to a conclusion that would be swayed by that view of this paragraph? I would submit, Your Honor, looking at the charge as a whole, as a reasonable juror, a reasonable juror hearing the evidence as well as this charge as a whole, we're focusing on everything on defendant's content, I understand the court's quandary in the fact that it doesn't specifically mention the defendant's deliberate use. The evidence in the case was the defendant's firing a weapon down towards the street where the shots are coming from that actually killed the victim. He's firing shots towards where the shots are coming from him. A reasonable juror looking at that would look at, as far as, are we going to find specific intent? He's shooting down there to kill his adversaries. A reasonable juror would find that he had malice, and when this whole thing is transferred intent, then when the court explains what transferred intent means, the court uses the disjunctive that I read to Mr. Malenicki to find, well, look, you can convict him of first-degree murder if he had the specific intent to kill someone involved in the incident, or if he acted with malice with respect to someone involved in the incident. When you put that together with the fact that anyone's use of a deadly weapon on a vital part of the body can give rise to specific intent to kill, and then say, well, you can transfer the malice from A to B under this doctrine that applies to this case of transferred intent, it becomes pretty mushy, doesn't it? Your Honor, what the court instructed is that to find the crime of homicide, that the defendant had the specific intent to kill, or they did not have to find he had the specific intent to kill the victim or malice with respect to the victim. The court didn't instruct them that they can find first-degree murder if they transfer malice. The court instructed them that if they find the particular intent, be it specific intent or malice, that intent can transfer. Right, but he didn't specifically mention homicide in that program. He just said if you find he had the specific intent to kill someone in the incident, or that he had malice with respect to someone, that intent may transfer. And then he didn't go on to say that would establish, and that would be perfectly fine. Either one of those things would establish the crime of homicide. It's up for you to determine the degree of homicide if you conclude the unreasonable doubt. The evidence is sufficient to prove homicide, and then refine the necessary requirement of specific intent in conjunction with the circumstantial evidence of the use of a deadly weapon on a vital part of the body and how transferred intent works there. In fact, Your Honor, the judge basically did the opposite of that. He instructed on the different degrees of murder, then instructed on the doctrine of transferred intent. As far as referring to homicide, he actually referred to that in the preceding paragraph. You do not have to find the crime of homicide, that the defendant had the specific intent to kill Leslie Samaniego or the intent to kill Leslie Samaniego or malice with respect to her. The judge is telling them to find homicide. You don't have to find any of these things if he had the specific intent or the malice with respect to someone involved. Then you can find homicide. But then, ladies and gentlemen, it's up to you to find what degree of intent. And in this particular case. Well, you should have presided because what you just said is a whole lot clearer than what the judge said. Why, thank you, Your Honor. You'd take a pay cut probably to do that. I wish. Your Honor, what I'd actually like to focus on, and I hope I've answered the Court's questions, is, as the Court indicated, the deferential standard to review here. This has to be objectively unreasonable. That's what it boils down to, isn't it? That is what this case boils down to is, has Perez met the AEDPA standard for objectively unreasonable? As we note in the brief, it is a very rare case where an instruction is not objected to at trial and then collateral relief is granted. The Supreme Court has noted that because the standard is higher. And as I pointed to the Court there in our brief, pointed to Williams v. Beard, a decision of this Court most recently that I could find on a similar issue, and that was the accomplice liability instruction was given. That was a case in which there were two defendants involved in a murder. The principle in that murder was tried. And the accomplice liability instruction was given to the jury. The issue that was raised was similar in that this allowed the jury to find specific intent to kill under accomplice liability. This Court followed the exact same path as the Superior Court did here. They looked at the challenge-specific instruction. They looked at the instruction as a whole and in light of the evidence presented at trial. And as this honorable Court noted, the propriety of the Court's charge is closely intertwined with the evidence and arguments brought forth at trial. The evidence and argument brought forth at trial in this case never involved the defendant's use of a deadly weapon on Leslie Samaniego's body. It only involved the defendant firing a weapon directly at his adversaries, the direction of his adversaries down the street. It is more than reasonable that a juror examining that evidence would find defendant firing at his adversaries down the street had the specific intent to kill those adversaries. But they could have. Again, he's not arguing sufficiency. Correct. The evidence would support the verdict. And when I look at the reasonable juror standard in that sense, Your Honor, with respect to the challenge instruction. So from our position, you don't even get over the due process hump of challenging this instruction should it have been a direct challenge. And therefore, you can't even get over the prejudice standard, the more difficult standard under Strickland. And since you can't reach those, it cannot be said that the decision of the Superior Court was objectively unreasonable and that there is such a clear error that there's no possibility that that decision could be correct. And that's what Petitioner needs to establish under the AEDPA, that it is objectively unreasonable. And while, with respect, this court may disagree with their decision, unless that decision is objectively unreasonable, habeas relief cannot be granted. And that's where I believe the District Court did an incredible job in a proper analysis of going down through it and pointing out where it may have disagreed with the Superior Court, but that wasn't the standard it needed to reach. What it needed to reach was that this was objectively unreasonable. And based on all the evidence at trial, based on the arguments at trial, based on the charge as a whole, based on the analysis conducted by the Superior Court, and in light of this court's precedence, that cannot be established. Did you handle this case in front of the District Court? I did, sir. I'm always curious as to why the District Court grants a COA after they decide. I do not know, sir. I was confused myself. I mean, sometimes we do, but seldom that you see the District Court second-guessing itself. That is correct, sir. And I think, as this court has noted, this is a very odd case. It is not the easiest case as far as the facts, as far as the law. It's a great bar exam case, right? Precisely, Judge. And I think when you look at that and you look at the fact that jurists of reason, yourselves, the District Court, the Superior Court of Pennsylvania, can certainly disagree on which way this could come out. And even with respect to Petitioner, many times in his brief, reasonable minds may differ on this. The fact that reasonable minds may differ, Judge, means that we cannot reach the AEDPA's standard that it is objectively unreasonable. What was the defense at trial? I probably should ask you. The defense at trial was actually part of it, and I apologize, I didn't point this out. In Williams, the case I was referring to earlier with the accomplice liability instruction, the defense at trial was, I wasn't there. They started the assault, I left. The defense at trial for Perez, a large part, was, I wasn't there, I wasn't shooting a gun. So now you've got the evidence at trial from the commonwealth's perspective is, he's in a gunfight with a rival gang. He's shooting down the street at the rival gang that's shooting at him. The defense is, I wasn't even there. Well, it had to have been a hearing, and the lawyers said, well, I'm not sure that would be enough. Given the Sixth Amendment foundation of this appeal, I guess you could argue that a lawyer would say, well, why would I object to it, because my whole claim was my guy wasn't there. But in and of itself, that may be substandard for a defense counsel to take that position, where the evidence is so strong that he was there and firing a gun. That is correct, Your Honor. And as the prior courts have essentially looked at it and said, you know what, we think he should have objected, so we're going to go to the prejudice prong. We did not present that argument. Again, I think it simply goes back to the standard. This court applies, and this court is required to apply, and that is, is it objectively unreasonable? Chief Judge, you just raised another point that could make it a reasonable decision to find that the attorney was not there. I'm not sure. I didn't mean to suggest that would be a reasonable decision. It would be, I could see a lawyer taking that position. I don't know how reasonable that would be.  It would be nuts of you. That's me. That is correct, Your Honor. Thank you. Thank you. Just real quick, Your Honor. Perez's trial counsel, you can read his closing. It was kind of a shotgun defense. There's no rational way to look around it. Perez did not testify at trial. He did not say I wasn't there. Secondly, Mr. Perez's trial counsel testified in evidentiary hearing in state court. He admitted he missed a boat. He wasn't paying attention. He should have objected to this. There was no strategic basis whatsoever. With respect to the Williams case, Your Honor, I don't think the Williams case mentioned by the appellee has any bearing on this for the sole reason. In Williams, the court concluded that the accomplished instruction should never have been given, but how Mr. Williams tried to piggyback on Everett B. Baird cited in my brief, Lard B. Horn cited in my brief, and Smith B. Horn cited in my brief, which I don't really distinguish. And in both of those cases, there's an issue about what standard of review. Do we go pre-AEDPA? That's all in my brief. But in Everett, Lard, and Smith, an instruction which allowed a jury to find intent resulted in those three individuals being given habeas relief by the federal courts, this court. Those are in my brief. But secondly, Your Honor, the standard under the AEDPA that's often overlooked because we focus on unreasonable determination, unreasonable determination, you can get relief if there was misapprehension of the facts or the facts weren't clearly determined. Very relevant to the Superior Court's decision was their conclusion twice that the court gave a correct statement of law. They put focus on that. They said this was a correct statement of law. It was not. So I submit their finding that it was a correct statement of law just isn't true. It was the first degree. It's correct as to the law of homicide. With respect to the deadly weapon instruction, the court got it wrong. The court didn't – the court got – I still don't know how the court got it right twice with respect to third, but kept, you know, getting it wrong with respect to first. But the Superior Court, very relevant to their decision, was this was a – they state this numerous times. It's superfluous. It's a correct statement of an applicable law. They were wrong. This was not a correct statement of applicable law that the court gave with respect to third and a deadly weapon, Your Honor. Thank you. Thank you. Thank you. Very well argued by both counsel. I take the matter under advisement. I thank both counsel for your help with the case here today.